RECEIVED

SEP 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COULUMBIA**

2

3  ROBERT E. LEE,                    )
                    Plaintiff,      )
4     v.                            )        Civil Action No. <u>1:07-cv-01088(HHK)</u>
                                    )
5                                   )        Next Court Date: N/A
   ROBERT M. GATES, SECRETARY,      )
6  DEPARTMENT OF DEFENSE,           )
   DEFENSE INFORMATION SYSTEMS      )
7  Agency,                          )
                    Defendant.      )

8

**PLAINTIFF'S MOTION IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS FOR**

9

**IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER**

10

11

12        Pursuant to 28 U.S.C. Sec.1404(c) and Sec. 1406 (b) and LCvR 7(b), Plaintiff

Robert E. Lee hereby moves the Court to dismiss Defendant's Motion to Dismiss for

13

Improper Venue or, in the Alternative, to Transfer, because Defendant's arguments

14

are irrelevant to the allegations in the Complaint.

15

        In support of this Motion in Opposition, Plaintiff refers the Court to the

16

accompanying Memorandum of Points and Authorities.

17

18

Dated:  September 10, 2007                      Respectfully Submitted,

19

20

21                                              Robert E. Lee
                                                729 Namsan Daelim Apt 101-501,
22                                              Itaewon 2 Dong, Yongsan Gu,
                                                Seoul 140-202, Republic of Korea
23                                              Telephone: 011-82-2-792-1954
                                                Email: leeroberte@yahoo.com

24

25

                                    1

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COULUMBIA**

2

3  ROBERT E. LEE,
                    Plaintiff,
4      v.                                              Civil Action No. <u>1:07-cv-01088(HHK)</u>

5                                                       Next Court Date: N/A
   ROBERT M. GATES, SECRETARY,
6  DEPARTMENT OF DEFENSE,
   DEFENSE INFORMATION SYSTEMS
7  Agency,
                    Defendant.

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION**
9  **IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR,**
   **IN THE ALTERNATIVE, MOTION FOR TRANSFER**
10

11          **I.    INTRODUCTION**

12          In support of Defendant's attorney of record's Motion the Memorandum of

13  Points and Authorities averments state the matters in the Complaint disguise what

14  should properly be a Title VII of the Civil Rights Act violation and matters

15  initially raised by Plaintiff were through the Agency's EEO process.  This is a

16  distraction for the Court at best and at worst misleading.  Further the relevant

17  matters in dispute would have been undertaken by the Washington Headquarters

18  Service Central Adjudicative Facility (CAF) located in the Pentagon.  The Pentagon

19  has a Washington, DC address and is within the current venue.  For these reasons

    the Defendant's Motion should be dismissed.

20          **II.   ARGUMENT**

21          Defendant's attorneys do not advise the Court that the matters in the

22  Complaint concerning Administrative Agency Review based upon Title 32, Subtitle A,

23  Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R) violations are the same as

24  Plaintiff originally presented to the Agency, and argued throughout the EEO

25  process.  Defendant's attorneys do not advise the Court to note that the EEOC's

1   Office of Federal Operations, Washington, D.C. DENIAL concluding that EEO process

2   stated:

3   **QUOTE** In his argument on reconsideration, in support of his claim that the
    previous decision contained erroneous interpretations of material fact,

4   complainant points to many instances where he claims that the agency has
    violated the regulations governing the granting of security clearances.  We

5   note that at no time does he attempt to show that the agency's decision was
    discriminatory under the laws and regulations over which the Commission has
    jurisdiction.  We note that any violations of the Department of Defense

6   regulations on security clearance should be addressed through the DOD
    security clearance process, which is of course, separate from the federal

7   sector EEO system **UNQUOTE.**

8       Defendant's attorneys do not advise the Court that the pertinent records

9   relative to Plaintiff's Complaint are sensitive but unclassified documents

10  Plaintiff furnished to the Agency in addition to information obtainable from non-

11  Agency sources.  Had the Agency not violated Title 32, Subtitle A, Chapter I, Sub

12  Chapter F, Part 154 (namely, DoD 5200.2-R) the Agency would have passed Plaintiff

13  produced documents to another DoD subordinate organization, the Washington

14  Headquarters Service, as the proper security clearance Adjudication Authority.  The

15  Agency would have only added one Agency produced product, namely, a one or two-page

16  Transmittal Memorandum requesting Adjudication Authority determination.  The

17  Washington Headquarters Service is in the Pentagon which has a Washington D.C.

18  address.  Security clearance adjudication process would have taken place there

    within the current venue.

19      Defendant's attorneys do not advise the Court the authoritative information

20  Plaintiff alleges the Agency disregarded is (and was then in 2003) obtained via

21  computer access from a sensitive but unclassified database available to the DoD's

22  worldwide security personnel.  The various Adjudication Authorities, in this case

23  the Washington Headquarters Service CAF in Pentagon offices all have local computer

24  access to this authoritative information database.  The Adjudicative Authorities

    are responsible for and produce the information written into this database.

25

                                        2

                                       --

1   The Agency personnel can only read and copy the information contained in this

2   database.

3       Defendant's attorneys do not advise the Court that Title 32, Subtitle A,

4   Chapter I, Sub Chapter F, Part 154 (namely, DoD 5200.2-R) is publicly available via

5   the worldwide web to read or download from any local computer.  Search web sites

6   such as GOOGLE will provide the link.

7       Defendant's attorneys to not advise the Court what documents important to

8   defend against Plaintiff's Complaint are held or obtainable solely from the Agency

9   outside the current venue.  Instead Defendant's attorneys' aver that Plaintiff is a

10  military retiree, former Defense Contractor employee with SAIC (leaving out the

11  MTISSC employment), and applied for, accepted, then had two tentative Agency

12  employment offers in the Agency facilities external to the current venue withdrawn.

13  Defendant's attorneys leave out that Plaintiff is also a former Federal Civilian

14  Employee with the DoD Department of the Navy from December 2003 through January

15  2007 with IT-II (equivalent to Secret security clearance for National Security

16  Systems) non-National Security Systems clearance.  Nor does Defendant's attorneys

17  advise the Court that in January 2004 Plaintiff provided the Agency copy of an

18  email from Plaintiff's employer's Security Manager that Plaintiff's Top Secret SCI

19  security clearance issued by the Air Force CAF (AFCAF) January 18, 2000 was active

20  and current.  This contradicting Agency assertions used as the basis for the

21  Agency's two prior tentative employment offer withdrawals.  But all of this

22  information is neither in dispute nor relevant to the matter before the Court.

23      If Plaintiff had been employed in the Agency's facilities as Defendant's

24  attorneys aver these matters before the Court would not exist.  The Court should

25  note that at no time since Plaintiff was a military member of the Agency's Germany

    subordinate organization from 1989 through 1991 in Turkey did the Agency or any

    Agency facility employ Plaintiff as a Federal Civilian.  Therefore no Plaintiff's

                                        3

                                        --

1    Agency employment records beyond Plaintiff's military assignment oversea exist for

2    the Agency to have in its possession.

3        Plaintiff provided security clearance documentation (including releases for

4    financial, law enforcement and other records), results of the releases used for the

5    security clearance review process, Plaintiff's submitted resumes for employment

6    opportunities, and the employment offers and subsequent withdrawal letters do not

    comprise employment records.

7        Also for the Court's consideration the only role the Selecting Officials

8    located at other Agency facilities had in what transpired between Plaintiff

9    accepting tentative employment offers and employment offer withdrawals was to

10   receive by voice, message, or other means the security clearance recommendations

11   made by the Agency Security Personnel.  These Selecting Officials then decided to

12   withdraw the tentative employment offers based upon these recommendations.  These

13   Selecting Officials then passed by voice, message, or other means the decision back

     to the Agency for implementation.  The documentation of the implementation of the

14   Selecting Officials decisions held by the Agency and Plaintiff is not in dispute.

15       Defendant's attorneys aver that Plaintiff availed himself of the Agency EEO

16   process.  This is also not in dispute.  These matters are well documented in the

17   Report of Investigation conducted by the Office of Complaint Investigation,

18   Investigations and Resolution Division, Sacramento, California Regional Office.

19   Copies of the Report of Investigation are held by the Agency, that DoD subordinate

20   organization, and Plaintiff.  However this is not relevant to the matter alleged.

21   What is made relevant is Defendant's attorneys' Motion averment that Plaintiff's

22   use of the Agency EEO process resulting in the Report of Investigation and

23   subsequent Title VII actions **QUOTE** Although not specifically designated as an

     employment discrimination case, the matter was initially brought through the

24   agency's EEO process **UNQUOTE**.  This averment from Defendant's attorneys' Motion, I.

25

                                        4

                                        --

1   Introduction, second paragraph, first sentence is neither accurate nor true.  This

2   will be addressed fully later in this Motion.

3        The only relevant matters in dispute are as alleged in Plaintiff's Complaint

4   and are within the jurisdiction of the Washington Headquarters Service CAF to

5   resolve pursuant to Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154

6   (namely, DoD 5200.2-R).  Again the proper venue given the Washington Headquarters

    Service CAF location is as Plaintiff avers.

7        Consequently the Agency would hold at most only two documents relevant to the

8   matters alleged.  None of these two relevant documents would be located at either

9   of the Agency's subordinate facilities Plaintiff would have worked in if hired by

10  the Agency.  Only one of the two documents would be Agency produced.  That document

11  being a one or two page unclassified Transmittal Memorandum to the Washington

12  Headquarters Service CAF forwarding documentation Plaintiff provided and providing

13  a recommendation based upon results obtained from records checks by other

    organizations pursuant to Plaintiff's release forms.  The Agency's recommendation

14  would either be favorable or unfavorable.  No other course of action is permissible

15  to the Agency pursuant to C8.1.2.1. of Title 32, Subtitle A, Chapter I, Sub Chapter

16  F, Part 154 (namely, DoD 5200.2-R).  As specifically stated:

17       **QUOTE** Whenever derogatory information related to the criteria and policy set
         forth in paragraph C2.2.1. and Appendix 8 of this Regulation is developed or
18       otherwise becomes available to any DoD element, it shall be referred by the
         most expeditious means to the commander or security officer of the
19       organization to which the individual is assigned for duty…The commander of
         the duty organization shall insure that the appropriate Central Adjudicative
20       Facility (CAF) of the individual concerned is informed promptly concerning
         (1) the derogatory information developed and (2) any actions taken or
21       anticipated with respect thereto…No unfavorable administrative action as
         defined in paragraphs DL1.1.28. and DL 1.1.29. may be taken by the
22       organization to which the individual is assigned for duty without affording
         the person the full range of protections contained in paragraph C8.2.2.,
         below, or, in the case of SCI, Annex B, DCID1/14 (reference (l)) **UNQUOTE.**
23

24       Thus the Agency was obliged not to be in possession of Plaintiff's security

25  clearance documents held among the records in possession of the Agency as

                                          5

                                          --

1   Defendant's attorneys aver in their Motion.  The Agency was **obliged** to pass the

2   records to the appropriate CAF, Washington Headquarters Service CAF, where they

3   would be in that organization's possession for adjudication; hence, within current

4   venue.

5        The second relevant document would be an unclassified response from and

6   produced by the Washington Headquarters Service CAF to the Agency.  With respect to

7   this second document if the Washington Headquarters Service CAF had agreed with the

8   Agency's Security Personnel recommendations the Agency would have formally

9   contacted Plaintiff in writing of the result.  This is pursuant to Title 32,

10  Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R), Chapter 8, paragraph

11  C8.2.2.2., which states Plaintiff shall be:

12       **QUOTE** Afforded an opportunity to reply in writing to the CAF within 30
         calendar days from the date to submit a timely response will result in
         forfeiture of all future appeals with regard to the unfavorable
13       administrative action.  Exceptions to this policy may only be circumstances
         where the individual's failure to respond to the SOR **(Statement of Reasons,
         my insert for clarification)** was due to factors beyond his or her control.
14       The CAF must be notified of the individual's intent to respond via the POC,
         within 10-calendar days of receipt of the SOR.  An extension of up to 30-
         calendar days may be granted by the employing organization following
15       submission of a written request from the individual.  Additional extensions
         may only be granted by the CAF.  Responses to the CAF must be forwarded
16       through the head of the employing organization **UNQUOTE**.

17       The Court should note that these two unclassified documents that, assuming

18  the Agency complies with its parent DoD initiatives to reduce papers, should

19  already be converted into pdf and easily emailed anywhere via the worldwide web.

20  The Washington Headquarters Service has already transmitted its email response to

21  Plaintiff's email pre-Complaint FOIA request for such documents.  Their response in

22  part is:

23       **QUOTE** This is in response to your June 1, 2007 Freedom of Information
         /Privacy Act (FOIA/PA) request.  The Office of the Secretary of Defense,
         Human Resources Directorate (HRD), conducted a search of their files for
24       records responsive to your request and located no records **UNQUOTE**.

25
                                         6

                                        --

1    The Court should note if documents and records Defendant's attorneys and/or

2    the Agency possess come from the Washington Headquarters Service CAF demonstrating

3    the Agency's compliance with Title 32, Subtitle A, Chapter I, Sub Chapter F, Part

4    154 (DoD 5200.2-R) adjudication process then they are Washington Headquarters

5    Service CAF products.  They were therefore generated within the current venue.

6    The Washington Headquarters Service actions, as well as the Agency's actions,

7    comprise a process mandated by these organizations' parent organization, the

8    Department of Defense (DoD).  The process is neither independently mandated by

9    these individual child organizations nor mutually agreed upon by these separate

10    child organizations such that the process should be examined in terms of separate

11    venue determinations for each part violated.  That the Title 32, Subtitle A,

12    Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R) adjudication process was violated

13    is a concern and the ultimate responsibility of the parent organization, the DoD,

14    as alleged by Plaintiff.  The ultimate responsibility for compliance with these DoD

15    processes is the Defendant and this is the proper venue for the Defendant.

**III.   RESPONSE TO DEFENDANT'S TITLE VII AVERMENT**

16    In their Motion Defendant's attorneys aver these matters were initially

17    brought against the Agency as an employment discrimination action and through the

18    EEO process.  This is not true.  This matter was brought to the Agency's attention

19    as a violation of the Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD

20    5200.2-R) mandated security clearance adjudication process with a contemporaneous

21    result of employment discrimination.

22    Following receipt of the Agency's July 29, 2003 email withdrawing tentative

23    employment offer, Plaintiff responded with an email the same date requesting

24    explanation for the Security Personnel determination.  Following no Agency response

25    Plaintiff followed up with an August 8, 2003 letter through the Agency Inspector

    General (IG) and with August 9, 2003 email to the Agency IG Hotline providing soft

1    copy of the August 8, 2003 letter. The August 9, 2003 email **Subject: Possible**

2    **Mismanagement Abuse or Abuse of Authority** requested the Agency conduct an

3    investigation.

4         Plaintiff's August 8, 2003 letter **Subject: Release of Derogatory Information**

5    **Influencing Decision to Withdraw Employment Offer,** third paragraph stated in part:

6         **QUOTE** Effectively, DISA made a decision based upon something in my SF 86 and
     SF 86A submission that there is something which must be of such a derogatory

7    nature in that information between November 2000 when I left Germany and your
     July 29, 2003 email to take the drastic action of not even extending an

8    interim Secret clearance to me to enable me to change my unemployed status.
     Under the Freedom of Information Act, as I did to obtain my Defense Security

9    Service files prior to my military retirement, I request you provide me the
     derogatory information that effectively destroys the character and integrity

10   of my patriotism and citizenship used by DISA for such a cruel action. Since
     the Central Clearance Facility (CCF) is the final authority for granting a

11   security clearance I assume someone at DISA contacted them and obtained the
     estimate of 8 to 12 months to complete my investigation and the CCF
     recommendation that an interim Secret clearance not be extended to me. I
     request an explanation of the basis for the CCF recommendation…**UNQUOTE.**

12        The Court should note that Plaintiff assumed the Agency fully complied with

13   the Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R)

14   mandated process of coordinating with proper Adjudicative Authorities prior to the

15   Agency's action withdrawing this first employment offer. Pursuant to Appendix 5,

16   AP5.1 of Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R)

17   only the authorities listed represented by their adjudication facilities can grant,

18   deny or revoke security clearances.

19        In the case of Plaintiff's SCI such authority is not vested in the Washington

20   Headquarters Service but must be referred to an authority such as identified by

     Plaintiff. The Court should note that pursuant to Chapter 2, C.2.4.1. of Title 32,

21   Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R) only the Defense

22   Investigative Service (DIS) may conduct personnel security clearance investigations

23   on DoD personnel.

24        Plaintiff assumed the Agency's coordination with proper adjudicative

25   authority included such authority's coordination with DIS for the estimate of the

                                    8

                                   --

1   length of a required security investigation.  The Court should note that pursuant

2   to Chapter 5, C.5.1.2.2. of Title 32, Subtitle A, Chapter I, Sub Chapter F, Part

3   154 (DoD 5200.2-R) the Agency as a Defense Agency may only request a personnel

4   security clearance investigation be conducted.  The Agency is not authorized to

5   conduct such investigation.  Therefore the Agency can not of a certainty determine

6   an investigation be conducted nor the duration of such investigation.

7       The Court should also note Plaintiff sought the nature of the derogatory

8   information that resulted in proper Adjudicative Authority's determination

9   Plaintiff's security clearance was denied, revoked, or suspended without recourse

10  to due process pursuant to DoD 5200.2-R.  Plaintiff's subsequent review of the

11  adjudicative process specified in DoD 5200.2-R convinced Plaintiff it was unlikely

12  the Adjudication Authority would violate the mandated process and implied traceable

13  document trail.  Plaintiff sought other explanation.  Plaintiff would not learn

    until much later the Agency's actions were non-compliant with DoD 5200.2-R.

14      Not receiving responses from either the Agency IG nor Agency security

15  personnel on the derogatory information pursuant to Plaintiff's FOIA request,

16  Plaintiff then engaged in a series of August and September 2003 emails directly

17  with the Agency FOIA contact.  Plaintiff attempted to determine the nature of the

18  derogatory information the Agency uncovered presumably used by the Adjudication

    Authority.

19      Not employed, not military member nor Federal Employee nor defense

20  contractor, Plaintiff was powerless to compel the Agency's compliance with

21  Plaintiff's FOIA request for information potentially having a direct impact on

22  Plaintiff's future employability in a position requiring security clearance in the

23  commercial or federal sector.  Plaintiff then contacted the Director, EEOC

24  Washington Field Office to determine if Title VII had been violated by the Agency's

    action withdrawing the employment offer.  Specifically Plaintiff's September 2,

25
                                        9

                                       --

1   2003 letter Subject: **Action Request Regarding Defense Information System Agency**

2   **Decision to Withdraw Employment Offer Likely Due to Title VII Violation.**  This

3   letter had four purposes explained in the first paragraph.  The quotation follows:

4       **QUOTE** This initial correspondence has four purposes in accordance with Title
        29, Part 1601, Subpart B, Section 1601.15 regarding the investigative
        authority of the Commission and my understanding of the information on the

5       Equal Employment Opportunity Commission web site at www.eeoc.gov.  Those
        purposes are: 1.  To request you and your staff determine whether you have

6       jurisdiction to investigate my allegation that someone(s) within the Defense
        Information Systems Agency (DISA) security element violated the applicable

7       laws by their action(s) which resulted in DISA withdrawing the tentative
        employment appointment extended to me; 2.  Assuming you do have jurisdiction,

8       to request your advise on the procedures for filing a charge of employment
        discrimination; 3.  To provide the seven-part information required for the
        charge of employment discrimination; and 4.  To notify the concerned agency's

9       (DISA) Equal Employment Opportunity Advisor of my charge within the 45 days
        of occurrence of the discriminatory act per the EEOC web site information.

10      This last shall be accomplished by copy furnished facsimile of this signed
        written correspondence via the fax number to the DISA Chief of Staff (DO) to

11      the Chief, Equal Employment and Cultural Diversity as no mailing address is
        provided for either on the DISA web site.  DISA is a Defense Agency of the

12      Department of Defense (DOD) **UNQUOTE**.

13      An Administrative Judge's September 10, 2003 letter responded to Plaintiff's

14  four queries including notice that the Agency must investigate discrimination

15  complaints by **QUOTE** Rather, it is DISA that must investigate your complaint **after**

16  you initiate contact with a Counselor and assuming your complaint is not dismissed.

17  Should your initial complaint develop into a formal complaint…**UNQUOTE.**

18      Plaintiff then sent an October 3, 2003 email to the Agency to initiate

19  contact with an EEO Counselor.  The Court should note that such contact with an

20  Agency EEO Counselor **did not occur** to begin the EEO complaint process until January

21  2004 after Plaintiff was employed by the Department of the Navy and moved to his

22  place of employment in Bethesda, Maryland.  In the interim the Agency responded in

23  part to Plaintiff's August 8, 2003 letter with a letter dated September 24, 2003

24  that indicated the Agency had not complied with the adjudication process as

25  Plaintiff had assumed.

        The 10 to 14 days international mail transit time imposed delays in

10

--

1    Plaintiff's receipt of the Agency correspondence until October 2003.  Plaintiff

2    immediately responded with an October 7, 2003 letter Subject: **Response to your 24**

3    **Sep 03 Response to my 8 Aug 03 Correspondence and Action Request.**  Plaintiff

4    provided an advanced copy email October 6, 2003 to the Agency IG-Hotline Subject:

5    **Folow-Up on Accusation of Mismanagement or Abuse of Authority.**  The Court should

6    note the Agency IG did not respond to Plaintiff.  The Court should also note in the

7    extract from the quotations Plaintiff specifically requests the Agency comply with

8    the Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R)

     mandated process by contacting proper Adjudicative Authorities.

9        **QUOTE** Given your concern surrounding my marriage to my foreign national wife
         as potentially a security concern I note that your information is either
10       inaccurate or incomplete.  I also note that you misunderstood the information
         in my SF 86 and SF 86A and completely disregarded specific information
11       contained therein.  Further, you are distorting the facts.  This issue came
         up in 1999, but fortunately for me the SAIC Security Manager was willing to
12       take the five minutes to make two phone calls, one to the Joint Staff
         Security Office and one to Fort Meade, Maryland to immediately obtain the
         latter's favorable recommendation for my Top Secret security clearance.  The
13       subsequent SCI access recommendation required two more weeks for the message
         **UNQUOTE.**

14       The Court should note Plaintiff provides the Agency authoritative

15   documentation identifying the Agency's misinterpretation of available authoritative

16   information.

17       **QUOTE** Your letter states that AFCAF issued me an interim SCI access on 18 Jan
         01 based upon a periodic review completed 3 Feb 95 and that I married my wife
18       subsequent to completion of my last Periodic Reinvestigation.  Completely
         inaccurate!  A five-year update would have been required of me NLT Mar 00
19       were that the case for me to retain my Top Secret and my SCI.  I was not
         required to initiate a five-year update in 2000.  The reason is in my SF 86
         and if you had contacted Fort Meade, the Adjudication Authority, as I stated
20       in my 8 Aug 03 letter your misinformation would have been corrected
         immediately.

21       Attachment 1 is a copy of the DA Form 873 for my Periodic Reinvestigation
         granting final clearance on 10 Mar 95.  As you can see from the remarks if a
22       new update was not submitted within five years, then my clearance should have
         been administratively downgraded to Secret by 10 Mar 00.  That did not happen
23       and I had my Top Secret collateral as well as my SCI through June 2001 when
         my employment with SAIC ended.  But I have been claiming my five-year update
24       probably expired in 2003.  That should have struck you as odd and a mystery
         that requires resolution.  Here's why.  Attachment 2 is page 8 from the SF 86
25       I provided to you.  Note in item 26 for my investigations record the most

                                        11

                                        --

1    recent date of 01/1998 (curiously it matches the month and year of my
     marriage) and the second date of 02/1995 (that matches Attachment 1
2    investigation completion date). Attachment 3 (six pages) DD Form 1879 is a
     copy of the Joint Staff Security Office submittal to CCF of a request for my
3    continued access to SCI following my marriage to a foreign national. Note
     the date 1/30/1998 following a favorable local investigation and local files
4    screening on 1/20/1998. Ten days to complete.

5    Prior to my marriage I was concerned about loss of my accesses should I marry
     a foreign national…Therefore, following my visit and marriage to my wife in
     Seoul, South Korea at the US Embassy and Seoul City Hall on 1/05/1998 and
6    immediately upon my return to duty at the Joint Staff on 1/20/1998 I
     initiated Attachment 3…I continued to occupy my position of trust with full
7    Top Secret SCI access through my retirement effective 1 Aug 98. Although my
     previous five-year update would not have been due until 2000, this issue (my
     marriage to a foreign national) was deemed by me to be of such concern that I
8    immediate sought resolution from the Adjudication Authority at Fort Meade and
     receive favorable disposition…**UNQUOTE**.

9    The Court should note Plaintiff's assertion in this correspondence of the

10   Agency's administrative review failure to comply with the mandated DoD 5200.2-R

11   adjudicative process which contemporaneously results in employment discrimination.

12   Plaintiff makes no allegation of employment violation based upon age, color, race,

13   or any Title VII concerns.

14   **QUOTE** That is why I clearly annotate item 26 (Attachment 2) to draw attention
     to it and have provided by fax previous cognizant Security Managers
15   Attachment 3 upon their requests so that they can make that one five-minute
     telephone call. In doing so those Security Managers have discovered from the
16   Adjudication Authority that simply marriage to a foreign national is not a
     prima facie security concern. I request you use Attachment 3 and take five
17   minutes to call the Adjudication Authority to determine for yourselves that
     the Adjudication Authority will determine that unless there exists other
     information of a derogatory nature, no justification exists for you to have
18   not extended to me an interim Secret or even Top Secret security clearance
     unless completion of a full security investigation proves otherwise. In that
19   way you will appreciate my claim that your unjustified and unjustifiable
     action is a violation of the Equal Employment Opportunity Act in that you
     flagrantly disregarded 'mitigating information' supporting my past, present,
20   and future safeguard of our Nation's secrets. If you have done this to
     others, then you are unnecessarily denying them employment opportunity and
21   violating the law **UNQUOTE**.

22   The Court should note that any Title VII violations inferred from these

23   initial actions as averred by Defendant are as a result of the Agency's violation

24   of Title 32. At that time Plaintiff determined there was no need to specifically

25   identify Title 32 in Plaintiff's reference to violation of law. All DoD personnel

12

--

1    involved in the personnel security clearance process are aware of the one page

2    December 16, 1986 Forward immediately after the cover page of DoD 5200.2-R.  The

3    Forward not only states the Regulation is **mandatory**, it also specifically states as

4    the final paragraph:

5        **QUOTE** This Regulation is being published in Title 32, Code of Federal
         Regulations (CFR).  DoD Components may obtain copies of this Regulation
         through their own publications channels.  Federal Agencies and the public may

6        obtain copies from the U.S. Department of Commerce, National Technical
         Information Service, 5285 Port Royal Road, Springfield, VA 22161 **UNQUOTE.**

7

8        The Court should note that Plaintiff did not then have either the January

9    2004 Department of the Navy Security Manager information nor the Agency FOIA

10   released information until January 2004 revealing the Agency's possession of

11   authoritative information that Plaintiff's security clearance was active and

12   current.  Even had Plaintiff possessed this information and documentation in 2003

13   Plaintiff was still powerless to compel Agency compliance with Title 32, Subtitle

     A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R).

14       The Court should note Plaintiff having already provided the Agency additional

15   authoritative documentation and requested Agency compliance with DoD 5200.2-R

16   mandatory processes was surprised by the following Agency responses.

17       In an October 6, 2003 email the Agency requested Plaintiff interest in a

18   second employment opportunity.  After receiving another tentative employment offer

19   telephonically October 10, 2003 Plaintiff then received notice that the employment

     offer would be withdrawn by email October 15, 2003.

20       Plaintiff proceeded in the same fashion with this Agency action as with the

21   prior employment offer withdrawal.  Plaintiff sent an October 21, 2003 letter

22   through the Agency IG to the Agency General Counsel FOIA Office Subject: **Release of**

23   **Derogatory Information Influencing Decision to Withdraw Second Employment Offer** and

24   an email of the same date to the Agency EEO Office.

25       Plaintiff then contacted the DoD IG in a November 14, 2003 email Subject:

                                          13

                                          --

1   **Possible Abuse of Authority at One Defense Agency** requesting **QUOTE** independent,

2   unbiased response…**UNQUOTE**. DoD bears ultimate responsibility for enforcement of

3   the Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R)

4   process. Plaintiff cited all Agency's arguments from its September 24, 2003 letter

5   to include Agency citation of a nonexistent paragraph in DoD 5200.2-R, Plaintiff's

6   request the Agency contact appropriate Adjudicative Authority and the Office of

7   Primary Responsibility for DoD 5200.2-R, and a copy of Plaintiff's current security

    clearance documentation. Plaintiff never received a DoD IG response.

8   Following Plaintiff's return to the United States in December 2003 for

9   employment with the Department of the Navy, Plaintiff was contacted in January 2004

10  by an Agency EEO Counselor nearly simultaneously with Plaintiff's receipt of the

11  Navy Security Manager email and the Agency two FOIA responses forwarded to

12  Plaintiff from South Korea by Plaintiff's spouse.

13  Given the information now available Plaintiff tried to determine Agency

14  motivation for steadfast noncompliance with the mandatory adjudicative process of

15  Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 (DoD 5200.2-R). The

16  Agency September 24, 2003 response offered only an indication since the matter the

17  Agency raised concerning Plaintiff's marriage had already been adjudicated by

18  proper adjudication authority and Plaintiff provided the Agency with this

    authoritative documentation.

19  Plaintiff having exhausted every means available to him short of civil legal

20  action to force Agency compliance with mandatory Title 32, Subtitle A, Chapter I,

21  Sub Chapter F, Part 154 (DoD 5200.2-R) requirements now sought to shed light upon

22  the Agency's noncompliance. Using the implied Title VII violation contained in the

23  Agency reference to the previously adjudicated matter of Plaintiff's marriage to a

24  non-U.S. citizen Plaintiff determined the Agency EEO process offered the

    possibility of prodding the Agency into action to obtain the Adjudicative Authority

25

14

--

1  determination it was required to obtain.

2       That did not occur as nowhere in the entire Agency EEO process nor in the

3  EEOC proceedings did an enforced demand the Agency produce the proper Adjudicative

4  Authority determinations manifest.  The Investigator's Report of Investigation

5  still has an unfilled placeholder exhibit for the documented determinations that
   remain unfilled to this day.

6

7       Not aided by legal counsel Plaintiff failed in the EEOC Washington Field
   Office proceedings against the Agency case law argument of "management prerogative"

8  to justify explainable and valid administrative actions taken by the Agency to

9  withdraw two tentative employment offers.

10

11     **IV.    CONCLUSION**

12      Plaintiff's Complaint pertains to violations of the parent organization's

13  Title 32, Subtitle A, Chapter I, Sub Chapter F, Part 154 process for which the
    parent organization, DoD has ultimate responsibility to enforce.  Contrary to

14  Defendant's attorneys' preferences for Title VII violations underpinning an

15  employment violation as the allegation.  Defendant's attorneys' entire argument for

16  improper venue or transfer is entirely based upon a Title VII underpinning.  The

17  underpinning for this allegation is Title 32 as presented in parts II and III

18  above.  Defendant's attorney's Motion has not presented sufficient relevant facts

19  pursuant to Fed. R. Civ. P. 12(b)(3) to defeat Plaintiff's assertion of venue.

20

21  Dated:   September 10, 2007                  Respectfully Submitted,

22

23                                              Robert E. Lee
                                                729 Namsan Daelim Apt 101-501,
                                                Itaewon 2 Dong, Yongsan Gu,
24                                              Seoul 140-202, Republic of Korea
                                                Telephone: 011-82-2-792-1954
25                                              Email: leeroberte@yahoo.com

                              15

                              --

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Plaintiff's Motion in Opposition of Defendant's Motion to Dismiss for Improper Venue or, Alternatively, To Transfer by first class Republic of Korea mail on September 11, 2007, to Defendant's Attorney of Record:

John C. Truong
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530



Robert E. Lee
729 Namsan Daelim Apt. 101-501
Itaewon 2 Dong, Yongsan Gu
Seoul 140-202
Republic of Korea
011-82-2-792-1954
Email: leeroberte@yahoo.com

16